UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WANDA JEAN BICKERSTAFF,

          Plaintiff,                    Case No. 2:15-cv-10917
                                                District Judge David M. Lawson
v.                                       Magistrate Judge Anthony P. Patti

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.
_____/

**RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DE 17) AND TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 13)**

I.     **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Defendant's motion for summary

judgment, **DENY** Plaintiff's motion for summary judgment, and **AFFIRM** the

Commissioner's decision.

II.    **REPORT**

       Plaintiff, Wanda Jean Bickerstaff, brings this action under 42 U.S.C. §§

405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social

Security ("Commissioner") denying her applications for disability insurance

benefits and supplemental security income. This matter is before the United States

Magistrate Judge for a Report and Recommendation on Plaintiff's motion for

summary judgment (DE 13), the Commissioner's memorandum in opposition and cross motion for summary judgment (DE 17), and the administrative record (DE 11).

### A.     Background

Plaintiff protectively filed her applications for benefits on December 7, 2011, alleging that she has been disabled since November 1, 2009.  (R. at 271.) Plaintiff's applications were denied and she sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  ALJ Henry Perez Jr., held a hearing on July 17, 2013.  (R. at 92-119.)  He subsequently determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 71-86.)   On January 30, 2015, the Appeals Council denied Plaintiff's request for review.  (R. at 1-4.) ALJ Perez's decision became the Commissioner's final decision.  Plaintiff then timely commenced the instant action.

### B.     Plaintiff's Medical History

#### 1.     Physical Health

On September 4, 2008, Plaintiff presented to neurologist Vaqar K. Siddiqui, M.D., with complaints of severe back pain, neck pain, pain in the right side, right chest pain, shoulder pain, and right leg pain following her August 27, 2008 motor vehicle crash.  (R. at 514.)  Dr. Siddiqui advised Plaintiff to go to the emergency room—although it is not apparent from the record that she did—and to attend

2

physical therapy.  Of particular note, Dr. Siddiqui pointed out that her memory problems and headaches could indicate a closed head injury.  (R. at 515.)  Plaintiff followed up with Dr. Siddiqui approximately every month until January 12, 2010.  (R. at 504-513.)  At her final appointment, Plaintiff reported worsening symptoms of back pain and difficulty walking.  Upon examination, Dr. Siddiqui found her to be somewhat depressed, but with good memory, and with no clear weakness in her legs.  He also noted that she walked without support.  (R. at 504.)  He advised her to see a psychiatrist, noting that her headaches were related to depression, anxiety, and stress.  (Id.)  Plaintiff underwent physical therapy from February 2, 2008 through March 23, 2010.  (R. at 488-490.)

Plaintiff was involved in another motor vehicle crash on November 14, 2011.  (R. at 350.)  She presented to the Botsford Hospital with complaints of headache, neck, and lower back pain.  An x-ray of her wrist revealed no evidence of fracture, subluxation, or dislocation.  (R. at 353.)  An MRI of her left shoulder was unremarkable.  (R. at 355.)

Plaintiff began treatment with family practitioner, Dr. Susan Rice, on January 6, 2012, complaining of pain in her back and hip.  (R. at 442.)  On March 16, 2012, Plaintiff underwent a consultative examination with Cynthia Shelby-Lane, M.D.  (R. at 368-375.)  Dr. Shelby-Lane described Plaintiff as alert and oriented, dressed appropriately, and noted that she "answered questions very well."

(R. at 369.)  Dr. Lane assessed Plaintiff as having chronic back pain, chronic headaches, and depression.  (R. at 370.)

Dr. Rice completed a Medical Needs form for the State of Michigan on April 17, 2012, in which she explained that Plaintiff suffered from a closed head injury, chronic back pain, anxiety disorder, and hypertension.  (R. at 377.)  She opined that Plaintiff was precluded from her past employment and other employment for at least two years.

Throughout her treatment, Dr. Rice noted that Plaintiff had difficulty driving due to pain and anxiety, had trouble finishing sentences due to a possible closed-head injury, and indicated that Plaintiff's shoulder was getting worse.  (R. at 447.)  She filled out a Medical Examination report for the state on February 1, 2013, noting that Plaintiff's condition was deteriorating.  (R. at 387.)  On June 28, 2013, Dr. Rice opined that Plaintiff could sit for less than 45 minutes, stand for less than 30 minutes, stand and walk less than two hours per day, and would need eight to ten unscheduled breaks during a workday.  (R. at 482-83.)

Dr. Rice referred Plaintiff to Stephen Hyman, M.D., for rehabilitation beginning on March 5, 2012.  (R. at 416-18.)  Dr. Hyman prescribed a TENS unit[1]

---

[1] A Transcutaneous Electrical Nerve Stimulation Unit ("TENS Unit") is a device that produces an electric current to stimulate the nerves and reduce pain. *Transcutaneous electrical nerve stimulation (TENS) for chronic pain*, Nat'l Library of Med., http://www.ncbi.nlm.nih.gov/pubmed/11687055 (last visited April 30, 2015).

4

and performed sacroiliac injections, which Plaintiff found "somewhat helpful." (R. at 413, 415, and 418.) On April 2, 2012, Dr. Hyman opined that Plaintiff was unable to work. (R. at 381.) On August 13, 2012, his notes indicate a 40% improvement since the last injection, noting that Plaintiff was "very pleased with progress." (R. at 412.) Plaintiff then underwent a rhizotmy and experienced "a little bit of improvement." (R. at 408.) On July 7, 2013, Dr. Hyman opined that Plaintiff should be limited to sitting for less than thirty minutes, standing for less than thirty minutes, and requiring unscheduled breaks. (R. at 494-95.)

### 2.   Mental Health

Plaintiff saw Dr. Stephanie Stevenson on November 17, 2011. (R. at 343.) Dr. Stevenson diagnosed her with major depressive disorder and anxiety disorder, and assessed a GAF score of 50.[2] (Id.) Her GAF improved to 55 on September 17,

---

[2] The GAF scale was used to report a clinician's judgment of an individual's overall level of functioning. Clinicians selected a specific GAF score within the ten-point range by evaluating whether the individual was functioning at the higher or lower end of the range. *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 33–34 (American Psychiatric Association, 4th ed. text rev. 2000) (DSM-IV-TR). A GAF score of 41-50 was indicative of serious symptoms (e.g., suicidal ideation, severe obsession rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). DSM-IV-TR at 34. A GAF score of 51-60 was indicative of moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Id. A GAF score of 61-70 was indicative of "mild symptoms (e.g. depressed mood and mild insomnia) or some difficulty in social, occupational, or

2011.  (R. at 347.)  Plaintiff was prescribed Buspar and Ativan on November 7, 2011.  (R. at 396.)  On October 1, 2012, her GAF was assessed as 68. (R. at 404.) On March 13, 2013, Plaintiff reported to Dr. Stevenson that she was "feeling better," and had no problems with her current medication regimen.  (R. at 401.)

Plaintiff underwent a mental status examination on March 16, 2012.  She was described as cooperative, in touch with reality, and "did not appear to be exaggerating her symptoms."  (R. at 363.)  Her mental activity was described as logical, goal directed, and organized.  (Id.)  Her GAF was assessed as 60 and she was diagnosed with grief bereavement disorder relating to the death of her daughter in 2010 and the ongoing anxiety of dealing with her special needs son. (R. at 364.)

On August 27, 2012, Plaintiff's primary care physician Dr. Rice, wrote a letter describing Plaintiff's recent difficulty in "expressing herself, remembering details and making decisions."  (R. at 384.)  She noted that Plaintiff had been "greatly changed" by her 2008 motor vehicle crash, as compared to her high level of mental functioning from 2006 through 2008.

---

school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Id. However, "the most recent version of the DSM does not include a GAF rating for assessment of mental disorders." *Bryce v. Comm'r of Soc. Sec.*, No. 12-CV-14618, 2014 WL 1328277, at *10 (E.D. Mich. Mar. 28, 2014).

C. **Hearing Testimony**

1. **Plaintiff's Testimony**

At the July 17, 2013 administrative hearing, Plaintiff testified that she completed high school through the tenth grade and went on to achieve her CNA certification. (R. at 96.) She worked as a CNA from around 1990 until she was involved in a motor vehicle crash in 2008. Specifically, she was employed as a direct care worker, which involved "bathing people, transporting people in and out of bed, medication, doing their laundry . . . taking them to doctor visits, doing physical therapy, range of motion." (R. at 97.)

Plaintiff testified that she was injured in an August 2008 motor vehicle crash, in which her car was hit by a pickup truck, causing the airbags to deploy. (R. at 98.) As a result, she claims that she injured her head, neck, back, and shoulder, for which she needed a rotator cuff replacement. She testified that these injuries remained problems at the time of the hearing, singling out her back pain as the most "disabling." (R. at 98-99.) She indicated that the pain "goes down my leg" and that physical therapy, rhizotomy, and epidural injections were not helpful. (R. at 99.) She further testified that her neck also still bothered her and caused headaches, but that a neck brace was unhelpful. (R. at 99-100.)

Plaintiff sought psychiatric treatment after her daughter was tragically killed in 2010. (R. at 102.) Plaintiff testified that she had trouble concentrating. (R. at

7

109.)  Plaintiff was involved in another motor vehicle crash in 2011.  (R. at 101.)  She testified that she fractured her hand during this second accident, for which she needed a cast and treatment with Vicodin and Tramadol.  Plaintiff indicated that she still had trouble using the hand repeatedly.  (R. at 112.)

Plaintiff testified that her treating physicians have limited her to lifting only ten pounds and under, and that she could only lift about four or five pounds.  (R. at 103.)  She stated that she could sit for thirty minutes without standing, stand for twenty minutes without sitting, and could only walk for ten to fifteen minutes with the assistance of a four-pronged cane prescribed for her by her doctor.  (R. at 104-105.)  Plaintiff also testified to having high blood pressure and migraines.  (Id., R. at 110.)

Plaintiff testified that she takes pain and psychiatric medications, which make her groggy, tired, and forgetful.  (R. at 106-107.)  On a typical day, she indicated that she awakes at 6:30 am to get her fourteen year old son ready for school, after which she lies down again.  (R. at 107.)  Plaintiff testified that her son has special needs resulting from the car accident, and that she gets help from her friend Alicia for day-to-day chores and care of her son.  (R. at 108.)  Plaintiff testified that she does very light cooking, does not do laundry, and accompanies Alicia when she goes grocery shopping.  (R. at 109.)  According to Plaintiff, on a "bad day" she just stays in the house and uses her TENS Unit, but she has to lie

8

down for a few hours even on good days. (R. at 111-12.) She indicated that her

pain rates an eight or nine out of ten without medication, and rates a seven with

medication. (R. at 112.)

### 2.    Vocational Expert Testimony

Dr. Lois Brooks testified as the Vocational Expert ("VE") at the

administrative hearing. (R. at 114-118.) The VE identified Plaintiff's past relevant

work as semi-skilled and medium with no transferrable skills. (R. at 115.) The

ALJ then presented a series of hypotheticals to the VE. In the first hypothetical,

the ALJ asked the VE to determine if a hypothetical individual of Plaintiff's age,

education, and work experience could perform her past relevant work at the

unskilled level with the following limitations:

> [A]ssume that such a person has an exertion limitation, lifting 20
> pounds occasionally, 10 pounds frequently, sitting, standing walking
> six hours. There's a frequent reaching overhead. There's occasional
> climbing ladders, ropes and scaffolds, occasional stooping. There's
> frequent climbing ramps, frequent climbing ramps and stairs, frequent
> balancing, frequent crouching, kneeling and crawling. Also, we're
> looking at jobs that would provide for routine production of stress,
> and simple job assignments.

(R. at 115.) The VE testified that the hypothetical individual could not perform

Plaintiff's past relevant work. (Id.) However, according to the VE, the

hypothetical individual could perform the following light, unskilled jobs: assembly

jobs, with 11,000 in Southeast Michigan, visual inspection sorting jobs, with 3,000

in Southeast Michigan, and packaging jobs, with 6,500 in Southeast Michigan.  (R. at 116.)

In his second hypothetical, the ALJ asked the VE whether the first hypothetical individual could perform the above-mentioned positions if he or she was limited to lifting less than ten pounds occasionally, standing, sitting, and walking for less than two hours each with a sit/stand option at will.  (R. at 116.) The hypothetical individual would need a period to walk around every hour and would need unscheduled breaks 8-10 times for 10-15 minutes.  Finally, the person would be precluded from climbing ladders or crouching, and could climb stairs, twist, and stoop only rarely.  (R. at 116-17.)  Finally, the job must provide for routine production of stress and simple job assignments.  The VE testified that such a restriction would be work preclusive because the RFC was less than eight hours.  (R. at 117.)

Finally, upon questioning from Plaintiff's counsel, the VE testified that employers tolerate a maximum of two missed days per month and that being off task for more than ten percent of the time is work preclusive.  (R. at 118.)

## D.  THE ADMINISTRATIVE DECISION

On August 26, 2013, the ALJ issued his decision.  (R. at 71-86.)  At Step 1 of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since November 1, 2009.  (R. at 73.)

At Step 2, the ALJ found that Plaintiff had the following severe impairments: disorders of the back, neck, and shoulders; obesity; hypertension; headaches; depression; and anxiety.  (R. at 73.)

At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any step terminates the  review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.   Is the claimant engaged in substantial gainful activity?
2.   Does the claimant suffer from one or more severe impairments?
3.   Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.   Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.   Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically,

Listings 1.02B, 1.04, 11.01, 12.04, and 12.06.  (R. at 74.)

Between Steps 3 and 4 of the sequential process, the ALJ evaluated

Plaintiff's residual functional capacity ("RFC")[3] and determined that Plaintiff had

the capacity to perform light work:

> [E]xcept that she is limited to only frequent reaching overhead; occasionally climbing ladders, ropes, or scaffolds; occasional stooping; frequent climbing of ramps and stairs; frequent balancing, crouching, kneeling, and crawling; requires jobs that would provide routine production and stress and simple job assignments; and requires unskilled work.

(R. at 76.)

The ALJ determined at Step 4 that Plaintiff was unable to perform her past

relevant work.  (R. at 84.)

At Step 5, the ALJ concluded that Plaintiff was capable of performing other

jobs that exist in significant numbers in the national economy.  (R. at 85-86.)  He

therefore concluded that Plaintiff was not disabled under the Social Security Act.

## E.  STANDARD OF REVIEW

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

---

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §404.1545(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this

13

Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.  ANALYSIS

Plaintiff asserts three statements of error.  First, she contends that the ALJ improperly discounted the opinions of her treating physicians.  Second, she posits that the ALJ made impermissible credibility findings and did not assign the proper weight to her testimony.  Finally, she argues that the ALJ's hypothetical to the VE did not accurately reflect her impairments, thereby making his finding at Step 5 invalid. The Commissioner opposes Plaintiff's motion, asserting that she is entitled to a grant of summary judgment because substantial evidence supports the ALJ's conclusions.  I will address each argument in turn.

### 1.    The ALJ Did Not Err in Weighing Opinion Evidence

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(b).  The regulations define

medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).  "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists."  20 CFR § 404.1527(e)(2)(i).  The ALJ must, however, "consider findings and other opinions" of State Agency medical or psychological consultants.

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ."  20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009).  To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant.  20 C.F.R. § 404.1502.

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.[4]  *Wilson v. Comm'r*

---

[4] An exception exists for treating source opinions on issues that are reserved to the Commissioner, which "are never entitled to controlling weight or special

*of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Specifically, if an ALJ does not

give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the
> treatment relationship and the frequency of examination, the nature
> and extent of the treatment relationship, supportability of the opinion,
> consistency of the opinion with the record as a whole, and the
> specialization of the treating source—in determining what weight to
> give the opinion.

*Id.; see also* 20 C.F.R. § 404.1527(c).

However, while an ALJ must "always give good reasons in [the ALJ's]

notice of determination or decision for the weight [the ALJ] give[s] your treating

source's opinion,"  20 C.F.R. § 416.927(c)(2), and   "must be sufficiently specific

to make clear to any subsequent reviewers the weight the adjudicator gave to the

treating source's medical opinion and the reasons for that weight,"  *Friend v.*

*Comm'r of Soc. Sec.*, No. 09-3889, 375 F. App'x 543, 550 (6th Cir. 2010) (per

curiam) (internal quotation omitted), there is no *per se* rule that requires a written

---

significance."  S.S.R. 96-5p, 61 FR 34471-0, at *34473.  Examples of issues
reserved to the Commissioner include:

> 1. Whether an individual's impairment(s) meets or is equivalent in
> severity to the requirements of any impairment(s) in the listings;
> 2. What an individual's RFC is;
> 3. Whether an individual's RFC prevents him or her from doing past
> relevant work;
> 4. How the vocational factors of age, education, and work experience
> apply; and
> 5. Whether an individual is "disabled" under the Act.

*Id.*

articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No. 11–CV–11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)).  In other words, the regulations do not require "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-805 (6th Cir. 2011) (citing § 404.1527(d)(2)).

Moreover, the failure to discuss the requisite factors may constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c) ]–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir.2006) (quoting *Wilson*, 378 F.3d at 547).  *See also, Betty v. Comm'r of Soc. Sec.,* No. 15-CV-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016), *report and recommendation adopted*, No. 15-CV-10734-DT, 2016 WL 1090554 (E.D. Mich. Mar. 21, 2016).

The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45.  Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

Here, Plaintiff asserts, in a fairly cursory manner, that the ALJ did not afford proper weight to the opinions of "several treating source statements," who opined that she was limited to a sedentary classification.  (DE 13 at 28.)  Unfortunately, Plaintiff fails to identify these "several" opinions, leaving the Court to guess as to which ones she means.  Plaintiff also asserts that the ALJ discounted Dr. Rice's letter describing Plaintiff's "clear cognitive deficiencies."  (Id.)  Finally, Plaintiff contends that the ALJ improperly afforded non-treating physicians great weight.

Defendant counters that Plaintiff has waived her argument related to the weighing of opinion evidence by failing to make a showing of specific error.[5]  In the alternative, Defendant contends that the ALJ's weighing of the opinion evidence is supported by substantial evidence.  For the reasons stated below, I find that the ALJ's opinion gives good reasons for discounting the medical opinions at issue and that the Commissioner has met the goal of § 1527(c).  *Francis*, 414 F.App'x at 805 (quoting *Wilson,* 378 F.3d at 547).  I also find that the opinion "'permits the claimant and [this] reviewing court a clear understanding of the reasons for the weight given [to the] treating physician's opinion[.]'" *Francis,* 414 F.App'x at 805 (quoting *Friend*, 375 F. App'x at 550).

### a.      Mental Health Opinions

Plaintiff contends that the ALJ should have given more weight to Dr. Rice's opinion that she had clear cognitive difficulties stemming from her 2008 motor vehicle crash. (R. at 385.)  The ALJ assigned this opinion "some weight" and accounted for those cognitive difficulties by limiting Plaintiff to unskilled jobs that provide for routine production and stress and simple job assignments.  (R. at 83.)

---

[5] I agree with Defendant in this respect, and will therefore only address the specific arguments that Plaintiff actually makes. To the extent Plaintiff intends to make additional, unspecified arguments, I conclude that those have been waived.  *See McPhereson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones."); *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Plaintiff has failed to demonstrate that the cognitive limitations opined by Dr. Rice are more stringent than those assessed in the ALJ's RFC. At Step 4, it was her burden to do so. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (clarifying that it was the plaintiff's "burden to prove the severity of her impairments.").

To the extent Plaintiff attempts to argue that Dr. Rice's opinion was supported by Dr. Stevenson's opinion that she could not work due to her psychiatric impairments, such a position is unavailing. Opinions that are merely "administrative findings that are dispositive of the case" are reserved to the Commissioner and therefore are not entitled to special significance, even when opined by a treating source. 20 C.F.R. § 404.1527(d). Examples of such administrative findings are opinions that the claimant is disabled or unable to work. However, the ALJ must still weigh and consider such opinions. 20 C.F.R. § 404.1527(c)(2); s*ee also Devault v. Comm'r of Soc. Sec.*, No. 14-11986, 2015 WL 556750, at *3 (E.D. Mich. Sept. 21, 2015) *amended on reconsideration for other reasons*, No. 14-11986, 2015 WL 7450399 (E.D. Mich. Nov. 24, 2015) ("The Social Security Administration must provide the weight it gives a treating source's opinion when making a disability determination." (citing *Wilson*, 378 F.3d at 544)).

Here, the ALJ did in fact "consider" and "weigh" Dr. Stevenson's opinion; however he afforded it little weight, noting that the opinion that Plaintiff could not

work was an issue reserved to the Commissioner.  The ALJ also properly

discounted the opinion, by noting the obvious inconsistency between Dr.

Stevenson's treatment notes, which indicated that Plaintiff was greatly improved

with medication and therapy, with her opinion that Plaintiff's mental issues

precluded all work.  (R. at 84.)  For example, Dr. Stevenson's notes indicate that

Plaintiff reported she was "feeling better" and had no problems with her current

medication regimen.  (R. at 401.)  Further, she increased Plaintiff's GAF rating

from a 50, on November 7, 2011 to a 65 on October 1, 2012.  (R. at 400 and 404.)

Accordingly, Plaintiff has failed to demonstrate that the ALJ erred in his analysis

or that his analysis is not supported by substantial evidence.

### b.    Reviewing Physicians

Plaintiff next asserts that the ALJ erred by assigning more weight to the

opinions of State Agency physicians who did not examine Plaintiff than to the

opinions of her treating physicians.  The ALJ gave the opinions of medical

consultant Quan Nguyen, M.D. (R. at 133-145) and psychological consultant Colin

King, Ph.D. (R. at 120-132) great weight, due to their consistency with the

objective medical evidence in the record.  (R. at 84.)  Plaintiff does not challenge

the consistency of the opinions, or specifically note the parts of the opinions with

which she disagrees, but instead takes issue with the fact that these individuals did

not personally examine her and did not have access to all of the evidence in the

21

record, due to finalizing their reports before the entire record was complete.  Dr. King signed off on his report on March 27, 2012 (R. at 125) and Dr. Nguyen signed off on April 3, 2012 (R. at 141.)  The most recent source of evidence reviewed by Dr. King was dated March 21, 2012 (R. at 126) and the most recent source of evidence reviewed by Dr. Nguyen was dated March 28, 2012 (R. at 134).

While it is true that the ALJ generally gives deference to the opinions of examining physicians, he or she must also consider the findings of other State Agency medical or psychological consultants.  20 C.F.R. § 404.1527(e)(2)(i). Here, the ALJ did not err in considering those findings and is not required to discount those findings merely because there was no examination.  20 C.F.R. § 404.1527(e)(1).

As to Plaintiff's second argument, the Sixth Circuit has recognized that there will "always be a gap between the time the agency experts review the record and give their opinion . . . and the time the hearing decision is issued." *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009).  The ALJ may rely on such opinions as long as the record reflects that he or she has considered the entire record. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 513 (6th Cir. 2010).  Here, the ALJ clearly considered the entire record, including medical evidence that was submitted after the evidence relied on by the reviewers.  For example, he cites to Dr. Rice's May 2013 treatment notes (R. at 78), March 2013 records from

orthopedist Jack Lennox, to which the reviewers did not have access (R. at 79), a March 2013 treatment note from Dr. Stevenson (R. at 80), Dr. Rice's medical needs form dated March 2013, as well as Dr. Rice's physical residual functional capacity questionnaire dated June 2013 (R. at 83.)  Plaintiff has not demonstrated that the ALJ failed to review the entire record, and has not demonstrated an error in the ALJ's assignment of weight to the opinions of the reviewing physicians. The law permits the ALJ to do exactly what he did, and I find no error in this regard.

### 2.    The ALJ did not Err in Assessing Plaintiff's Credibility

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue,* 263 F. App'x 469, 475 (6th Cir. 2008); *see also Beavers v. Sec'y of Health, Ed., and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) ("The opportunity to observe the demeanor of a witness, evaluating what is said in the light of how it is said, and considering how it fits with the rest of the evidence gathered before the person who is conducting the hearing, is invaluable, and should not be discarded lightly.").  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 469, 475 (6th Cir. 2007).

Nevertheless, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters,* 127 F.3d at 531; *see also Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011) ("Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect."). When assessing an individual's credibility, "the ALJ must [first] determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged." *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011).

Upon making such a finding, the ALJ must next "consider the entire case record" to "evaluate the intensity, persistence, and functional limitations of the symptoms considering objective medical evidence." 20 C.F.R. § 404.1529(c)(1-3); Soc. Sec. Rul. 96-7p. A non-exhaustive list of relevant factors to be considered by the ALJ include: 1) the claimant's daily activities; 2) location, duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of medication; 5) treatment, other than

24

medication; 6) any measures the claimant uses or has used to relieve his or her pain or other symptoms; and 7) other factors concerning functional limitations and restrictions. *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 474 (6th Cir. 2014); 20 C.F.R. § 404.1529(c)(1-3); Soc. Sec. Rul. 96-7p; *see also Ewing v. Astrue*, No. 10-cv-1792, 2011 WL 3843692, at *9 (N.D. Ohio, Aug 12, 2011) ("Social Security Ruling 96-7p requires such factors to be *considered*, not *discussed* . . . .") (emphasis in original) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006)). In his or her opinion, the ALJ must "provide a sufficiently specific explanation for his [or her] credibility determination so that it is clear to the individual and any subsequent reviewers the weight given to the individual's statements and the reasons for that weight." *Malcolm v. Comm'r of Soc. Sec.*, No. 13-15188, 2015 WL 1439711, at *7 (E.D. Mich. Mar. 27, 2015) (citing *Soc. Sec. Rul.* 96-7, 1996 WL 374186, at *1 (July 2, 1997)).

Here, the ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms she alleged, her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. (R. at 77.) Plaintiff contends that this analysis was in error because objective evidence supports the level of impairment to which she testified. Plaintiff points to unspecified MRI examinations and x-rays to support her position, and asserts that the ALJ ignored this objective evidence.

(DE 13 at 30.)  This does not assist the Court in reviewing for error.  More helpfully, the ALJ cited to a considerable amount of objective evidence when assessing Plaintiff's credibility, including an unremarkable x-ray of the left shoulder and left wrist (R. at 77, 353, and 354) and Dr. Cynthia Shelby-Lane's examination that revealed no spinal deformity, swelling, or muscle spasms and the fact that Plaintiff had a normal gait without a cane (R. at 77 and 370).[6]  The ALJ also observes that the physical examination notes of Plaintiff's own treating physician reflect that Plaintiff had been "essentially normal" with no positive straight leg raise tests and no reduced muscle strength.  (R. at 78 and 442-449.)  Finally, the ALJ points to Dr. Hyman's finding of 5/5 muscle strength in the upper and lower extremities, with no evidence of gait abnormalities.  (R. at 78 and 417.)  The ALJ's credibility analysis is supported by a significant amount of objective evidence in the record, and the existence of alternative evidence is not sufficient to overturn the ALJ's findings at this stage.

See VanSingel v. Comm'r of Soc. Sec., 26 F. App'x 488, 489 (6th Cir. 2002) ("If supported by substantial evidence, the Commissioner's decision must be affirmed, even if [the reviewing court] would have arrived at a different result.") (citing Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983)).

---

[6] This evidence directly contradicts Plaintiff's testimony that she could only walk with the assistance of a four-pronged cane.  (R. at 105.)

Plaintiff further argues that the ALJ erred by not considering the factors set forth in S.S.R. 96-8p, specifically: 1) Plaintiff's ability to work a full-time schedule; and 2) the side effects of her medication.  This argument is without merit for several reasons.  First, the ALJ was not required to "produce a detailed statement" outlining in writing all of 96-8p factors he considered.  *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 929 (E.D. Mich. 2005).  In regard to Plaintiff's first argument, the ALJ's finding that she was capable of competitive employment indicates that he also implicitly believed she was capable of working a competitive schedule.  In fact, the regulation to which Plaintiff cites *specifies* that an RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting, on a regular and continuing basis."  S.S.R. 96-8p.  The phrase "regular and continuing basis" is defined as "8 hours a day, for 5 days a week, or an equivalent work schedule."  Id.; *see also Hayward v. Comm'r of Soc. Sec.*, No. 14-14613, 2015 WL 7749173, at *8 (E.D. Mich. Sept. 21, 2015), *report and recommendation adopted*, No. 14-14613, 2015 WL 7733448 (E.D. Mich. Nov. 30, 2015) (concluding that "by definition, the ALJ's RFC assessment is a determination as to the work [the plaintiff] can perform eight hours a day, five days a week.").   That the ALJ considered this when assessing the RFC is supported by the his rejection of the hypothetical to the VE that involved an RFC of less than eight hours per day.  (R. at 116-17.)  As to Plaintiff's second argument,

27

the ALJ actually did consider, in writing, the side effects of Plaintiff's medications. (R. at 77, 79, and 80.)   Accordingly, Plaintiff has not demonstrated ALJ error on this point.

### 3.   The Hypothetical to the VE was Supported by Substantial Evidence

When, as here, an ALJ concludes that a claimant does not have the RFC to perform his or her past relevant work, the burden shifts to the Commissioner to show that Plaintiff "possesses the capacity to perform other substantial gainful activity that exists in the national economy." *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  This requires the Commissioner to "make a finding supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (internal citations omitted).

Such substantial evidence "may be produced through reliance on the testimony of a vocational expert (VE) in response to a 'hypothetical' question, but only if the question accurately portrays [the claimant's] individual physical and mental impairments." *Id.*  "A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which the Plaintiff can perform." *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 927 (E.D. Mich. 2005).

28

In the instant action, Plaintiff contends that the ALJ improperly relied on VE testimony that was based on an inaccurate hypothetical, namely one that did not take into account for her osteoarthritis and limitations in the right upper extremity, as well as her moderate deficiencies in concentration, persistence, and pace ("CPP").  In reality, since the ALJ's Step 5 analysis and hypothetical to the VE rest entirely upon his Step 4 RFC finding, and since the ALJ's Step 5 findings are consistent with the RFC and the VE's testimony, Plaintiff is really attacking the RFC itself.  By framing her argument in this way, Plaintiff attempts to shift the burden of proof from herself to the ALJ, since the burden remains with the claimant until Step 5.  *Jones v. Comm'r Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work . . . .").  I will address each challenged factor of the RFC in turn.

### a.       Osteoarthritis and Upper Extremity Limitations

Plaintiff contends that the ALJ's hypothetical to the VE did not take into account her upper extremity limitations because it limited her only to "frequent" reaching overhead.[7]  However, Plaintiff does not meet her burden of establishing

---

[7] The Social Security Administration defines "frequently" as something occurring "one-third to two-thirds of an eight hour workday."  POMS DI 25001.001(B)(34),

that her impairments caused more limitations than those assessed by the ALJ. *See*

20 C.F.R. § 416.912(c) (Claimants bear the responsibility to provide evidence

showing how their impairments affect their ability to work). The ALJ concluded

that the RFC was supported by medical evidence, objective findings, and the

opinions of medical providers, including the fact that diagnostic testing revealed

"full muscle strength and no evidence of joint instability or apprehension of her

shoulder." (R. at 76 and 82.) The RFC was reflected in his hypothetical questions

to the VE.

Rather than identifying specific errors in the ALJ's RFC assessment (and

corresponding hypothetical), Plaintiff instead points to other evidence in the record

that supports her desired conclusions and asks this Court to re-weigh the evidence

in her favor. *See VanSingel v. Comm'r of Soc. Sec.*, 26 F. App'x 488, 489 (6th Cir.

2002) ("If supported by substantial evidence, the Commissioner's decision must be

affirmed, even if [the reviewing court] would have arrived at a different result.")

(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir.1983)). The analysis

that Plaintiff urges would be incompatible with the 'substantial evidence' standard

of review. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (concluding

that "[a]n administrative decision is not subject to reversal merely because

---

available at https://secure.ssa.gov/poms.nsf/lnx/0425001001 (last visited May 31,
2016). Plaintiff's citation to 20 C.F.R. § 404.1520a(b)(3) does not exist.

substantial evidence would have supported an opposite decision."). Moreover, Plaintiff fails to demonstrate that Dr. Jack Lennox's observation that Plaintiff had less than full range of motion and right arm weakness requires a finding that she was more functionally limited than the ALJ opined. *See Guy v. Comm'r of Soc. Sec.*, No. 11-12828, 2013 WL 1148413, at *5 (E.D. Mich. Feb. 19, 2013) *report and recommendation adopted*, No. 11-CV-12828, 2013 WL 1148412 (E.D. Mich. Mar. 19, 2013) (noting that "disability determinations turn on . . . the functional limitations caused by Plaintiff's impairment."). Moreover, in his analysis, the ALJ acknowledged Dr. Lennox's findings that Plaintiff had right shoulder tenderness, pain, and impingement, but also pointed out his assessment that she had 5/5 rotator cuff strength, no joint instability, no crepitation, and that her peripheral neurological examination was fully intact. (R. at 79.) Plaintiff does not challenge these additional conclusions made by Dr. Lennox.[8] Accordingly, Plaintiff has failed to demonstrate that the ALJ's reliance on the VE's testimony in response to

---

[8] Plaintiff does, however, point out that the ALJ "curiously" indicated that she had the ability to occasionally climb ropes. (DE 13 at 32, R. at 76.) Specifically, the ALJ stated that Plaintiff was limited to light work with the further limitation to "occasional climbing of ladders, ropes, or scaffolds." (R. at 82.) While I agree it was a bit "curious" for the ALJ to conclude that Plaintiff would be able to climb ropes, it is of little moment to the ultimate RFC conclusion, as climbing abilities "have very little or no effect on the unskilled light occupational base." S.S.R. 83-14, 1983 WL 31254, at *5.

the portion of his hypothetical relating to her ability to reach was not supported by substantial evidence.

### b.    Moderate Deficit in CPP

At Step 3, the ALJ concluded that Plaintiff had moderate limitations in CPP. (R. at 75.)  To account for this deficiency, the ALJ limited Plaintiff to unskilled work that would provide for routine production and stress and simple job assignments.  (R. at 76.)  Plaintiff contends that the ALJ erred by failing to incorporate this moderate limitation into the hypothetical to the VE.  She relies on *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930 (E.D. Mich. 2005), to support her proposition that a moderate limitation in CPP is work preclusive.  (DE 13 at 33.) However, Plaintiff overstates the *Edwards* holding, in which the Court concluded that in *that specific case*, the hypothetical opined by the ALJ (limiting Plaintiff to unskilled work) did not accurately reflect Plaintiff's limitations.  It was not a blanket decision indicating that moderate impairments in CPP prevent competitive employment.

Instead, the Sixth Circuit has rejected "the notion that a hypothetical question must contain talismanic language," including a recitation that Plaintiff had moderate limitations in CPP.  (DE 13 at 14, quoting *Street v. Comm'r of Soc. Sec.*, 390 F. Supp. 2d 630, 638 (E.D. Mich. 2005) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)).  Consistently, Courts in this district have emphasized the

32

need for a case-by-case analysis when assessing whether a limitation to unskilled work adequately accounts for a CPP deficiency. *Bohn-Morton v. Commissioner of Social Security*, 389 F. Supp. 2d 804, 805-07 (E.D. Mich. 2005); s*ee also Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010)(noting that "[d]ecisions in this district reflect the conclusion that a moderate impairment in concentration, persistence, and pace does not necessarily preclude simple, routine, unskilled work."); *McNamara v. Comm'r of Soc. Sec.*, No. CIV.A. 11-10331, 2011 WL 7025855, at *12 (E.D. Mich. Dec. 1, 2011) *report and recommendation adopted*, No. 11-10331, 2012 WL 113541 (E.D. Mich. Jan. 13, 2012) (concluding that the ALJ's hypothetical "need not incorporate a listing of the claimant's medical conditions, so long as the vocational expert's testimony . . . takes into account the claimant's functional limitations."); *Schalk v. Comm'r of Soc. Sec.*, No. 10-CV-13894, 2011 WL 4406824, at *11 (E.D. Mich. Aug. 30, 2011) *report and recommendation adopted*, No. 10-13894, 2011 WL 4406332 (E.D. Mich. Sept. 22, 2011)(concluding that there is "no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of "unskilled work" but excludes a moderate limitation in concentration" and holding that, instead, the "Court must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC.").

Based upon my review of the record as a whole, I conclude that the ALJ's hypothetical to the VE accurately portrayed Plaintiff's mental limitations and substantial evidence supports the hypothetical and subsequent RFC.  First, this aspect of the RFC is supported by evidence in the record, including the opinion of Dr. King, who concluded that Plaintiff had moderate limitations in CPP but was capable of sustaining an "independent routine of simple work activity." (R. at 125 and 130.)  It is also consistent with the opinion of Julia Czarnecki, MA, LLP, who opined that Plaintiff's mental impairments did not interfere "with her ability to do work related activities at a sustained pace." (R. at 364.)  Second, the ALJ's RFC was actually *more restrictive* than that opined by Dr. King and Ms. Czarnecki, limiting Plaintiff to unskilled work with routine production and stress and simple job assignments.  Finally, Plaintiff's own self-reports of her symptoms, as well as the Third Party Function Report prepared by Ms. Felicia Marshall, are consistent with the RFC.  Specifically, Plaintiff is able to care for her minor son with special needs, keep up with basic household chores, prepare meals, handle money, and goes shopping. (R. at 74, 257-268, and 269-276.)  Accordingly, substantial evidence in the record supports the ALJ's hypothetical to the VE and therefore it was not in error for the ALJ to rely on the answer to the hypothetical at Step 5.

### G.   CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment, **GRANT** Defendant's motion for summary judgment, and **AFFIRM** the Commissioner of Social Security's decision.

### III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated: July 15, 2016            s/Anthony P. Patti
                                Anthony P. Patti
                                UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record
on July 15, 2016, electronically and/or by U.S. Mail.

                                s/Michael Williams
                                Case Manager for the
                                Honorable Anthony P. Patti